IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BRANSCOME, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:17CV00359 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| VIRGINIA DEPARTMENT OF | ) | By: Hon. Glen E. Conrad |
| ENVIRONMENTAL QUALITY, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

Christopher Branscome filed this action against his former employer, the Virginia Department of Environmental Quality ("DEQ"), asserting claims of discrimination and retaliation in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq.; the Virginians with Disabilities Act ("VDA"), Va. Code § 51.5-1 et seq.; and Virginia common law. The case is presently before the court on DEQ's partial motion to dismiss. For the reasons that follow, the court will grant the motion.

## Background

The following facts, taken from the plaintiff's complaint, are accepted as true for purposes of the defendant's motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

In December of 2014, Branscome was hired to work as a Solid Waste Compliance Inspector at DEQ's Blue Ridge Regional Office in Roanoke, Virginia. In that position, Branscome was supervised by Aziz Farahmand and Rebecca Wright.

Branscome claims that he is disabled as a result of Attention Deficit Hyperactivity Disorder ("ADHD"), which affects his ability to maintain focus and concentration, organize tasks, communicate, and engage in critical and/or analytical thinking. After requesting accommodations for his disability, Branscome met with Farahmand and Wright on February 25, 2016. During the meeting, Branscome advised the supervisors of his disability and requested more specific direction on goals and objectives applicable to his position. Branscome summed up his request for accommodation by asking Farahmand and Wright to "[p]ut it in black and white" and "[t]ell [him] what to do." Compl. ¶ 15, Docket No. 1-1. Branscome claims that neither Farahmand nor Wright "offer[ed] any sort of accommodation" or "engage[d] in the interactive process by which a correct accommodation could be determined." Id. ¶ 19.

The following month, Branscome contacted Farahmand via email and requested permission to travel to a worksite directly from his residence instead of stopping by the Roanoke office first. Although similar requests from other employees had been granted, Farahmand denied Branscome's request and directed him to proceed to the Roanoke office prior to heading to the worksite.

In late spring of 2016, after being reprimanded on several occasions for the manner in which he was filling out timesheets, Branscome asked Farahmand for a copy of a completed timesheet to use as an example. Branscome alleges that Farahmand "denied this very reasonable request for an accommodation." Id. ¶ 25.

In May of 2016, Branscome asked Farahmand whether he should enroll in a technical writing course to improve his writing skills. Farahmand advised Branscome that it was not necessary for Branscome to enroll in any class.

Branscome alleges that he was repeatedly accused of performing poorly at work, even though his work performance met the legitimate needs of his employer. Alternatively, to the extent his performance did not meet expectations, Branscome claims that he could have met the legitimate expectations of his employer if he had been afforded reasonable accommodations for his disability. Branscome alleges that his employment was wrongfully terminated on June 21, 2017.

## Procedural History

On June 16, 2017, Branscome filed the instant action against DEQ in the Circuit Court for the City of Roanoke. In Count I, Branscome claims that he was subjected to disability discrimination in violation of the Rehabilitation Act. In Count II, Branscome alleges that he was subjected to retaliation in violation of the Rehabilitation Act. In Count III, Branscome claims that DEQ violated the Rehabilitation Act by failing to accommodate his disability. In Count IV, Branscome alleges that the DEQ wrongfully terminated him in violation of public policies expressed in the VDA. In Counts V through VII, Branscome asserts claims of discrimination, retaliation, and failure to accommodate under the VDA.

After removing the case to this court on the basis of federal question jurisdiction, DEQ filed the instant motion for partial dismissal. DEQ seeks dismissal of Count III on the basis that the claims of failure to accommodate are barred by the applicable one-year period of limitation. DEQ seeks dismissal of Count IV on the basis that the Virginia General Assembly abrogated the common law such that no plaintiff may bring a claim of wrongful discharge based on a public policy that is also reflected in the Virginia Human Rights Act, Va. Code § 2.2-3900 et seq. Finally, DEQ has moved to dismiss the VDA claims asserted in Counts V through VII on the basis that the department is covered by the Rehabilitation Act.

In response to the motion to dismiss, Branscome acknowledges that the VDA claims are subject to dismissal. See Va. Code § 51.5-41(F) ("This section shall not apply to employers covered by the federal Rehabilitation Act of 1973."). However, Branscome opposes the dismissal of Counts III and IV.

**Standard of Review**

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, the court's evaluation is "generally limited to a review of the allegations of the complaint itself." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165-66 (4th Cir. 2016). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" meaning that it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

**Discussion**

**I.   Failure to Accommodate**

DEQ seeks dismissal of Count III on the ground that Branscome's claims of failure to accommodate are barred by the applicable one-year period of limitation. In response, Branscome argues that DEQ never fulfilled its responsibility to engage in an interactive process to determine

an appropriate accommodation for his disability, and that its failure to do so was an ongoing violation that renders his claims timely.[1]

The Rehabilitation Act prohibits agencies from discriminating against a qualified individual with a disability "solely by reason of her or his disability." 29 U.S.C. § 794(a). "To establish a claim under the Rehabilitation Act for a failure to accommodate, a plaintiff must show (1) he has a disability; (2) his employer knew of the disability; (3) with reasonable accommodations he is otherwise qualified to perform the essential functions of the employment position in question; and (4) his employer refused to make such reasonable accommodations." Lewis v. Gibson, 621 F. App'x 163, 164 (4th Cir. 2015) (citing Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (listing elements of a failure to accommodate claim brought pursuant to the Americans with Disabilities Act ("ADA")); see also Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) (explaining that the same analysis is applied to discrimination claims under the ADA and the Rehabilitation Act).

The Rehabilitation Act does not include an express statute of limitations. Accordingly, courts look to the most appropriate statute of limitations under state law. Wolsky v. Medical College of Hampton Rds., 1 F.3d 222, 224 (4th Cir. 1993). In Wolsky, the United States Court of Appeals for the Fourth Circuit held that the VDA is the most analogous statute in Virginia, and that its one-year period of limitation applies to claims filed under the Rehabilitation Act. Id. at 225.

The limitations period for a Rehabilitation Act claim begins to run "when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" A Soc'y Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (quoting Cox v. Stanton, 529 F.2d 47, 50 (4th

---

[1] The federal regulations implementing the Rehabilitation Act provide that, to determine an appropriate reasonable accommodation, "it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).

5

Cir. 1975). The Fourth Circuit, like other federal appellate courts, has identified an employer's failure to accommodate as a "discrete act" of discrimination that occurs at the time a requested accommodation is denied. Hill v. Hampstead Lester Morton Court Partners LP, 581 F. App'x 178, 181 (4th Cir. 2014); see also Dick v. Dickinson State Univ., 826 F.3d 1054, 1059 (8th Cir. 2016); Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130-31 (1st Cir. 2009). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). "Thus, a plaintiff who renews a request for a previously denied accommodation may bring suit based on a new discrete act of discrimination if the defendant again denies the request, and the subsequent denial carries its own, independent limitations period." Hill, 581 F. App'x at 181.

In this case, Branscome does not allege that any of his requests for an accommodation were denied within the one-year period preceding the filing of the instant action on June 16, 2017. Instead, his complaint refers to requests made before and during a meeting on February 25, 2016, in March of 2016, in the spring of 2016, and in May of 2016, all of which were denied or ignored. Because these discrete acts of alleged discrimination occurred outside the one-year period of limitation, they are not actionable under the Rehabilitation Act.

Branscome attempts to revive Count III by emphasizing that DEQ "never engaged in any interactive process despite [his] request for assistance." Pl.'s Br. in Opp'n 4, Docket No. 9. Branscome argues that DEQ "had up to the date of [his] termination to begin this process," and that its "on-going failure" to do so provides a basis for liability under the Rehabilitation Act. Id. For the following reasons, however, the court disagrees.

First, the interactive process described in the regulations is "not an end in itself; rather it is a means for determining what reasonable accommodations are available to allow a disabled

6

individual to perform the essential job functions of [his] position." Wilson, 717 F.3d at 347 (internal citation and quotation marks omitted) (discussing the interactive process implicated under the ADA). Thus, it is "well established that 'an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process.'" Id. (quoting Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 323 (4th Cir. 2011)); see also Minnihan v. Mediacom Communs. Corp., 779 F.3d 803, 813 (8th Cir. 2015) ("There is no per se liability under the ADA if an employer fails to engage in the interactive process.").

Second, because "a defendant's failure to accommodate constitutes a discrete act rather than an ongoing omission, the continuing-violation doctrine is inapplicable." Hill, 581 F. App'x at 181. Accordingly, Branscome cannot successfully argue that the failure to accommodate his ADHD, coupled with his continued employment until June 21, 2017, constituted an ongoing or continuing violation of the Rehabilitation Act. "Such a result would nullify the statute of limitations in all failure-to-accommodate claims where the employer denies an employee's accommodation request and the employee remains with the company." Durham v. Atl. City Elec. Co., No. 08-1120, 2010 U.S. Dist. LEXIS 103998, at *26 (D.N.J. Sept. 28, 2010).

Because Count III is premised upon acts that fall outside the one-year period of limitation, the accommodation claims, as currently pled, are time-barred.[2] Accordingly, the court will grant DEQ's motion to dismiss Count III. The accommodation claims will be dismissed without prejudice to the plaintiff's right to amend within 21 days.

---

[2] During the hearing on the instant motion, the plaintiff suggested that he may be able to amend Count III to identify discrete acts that occurred within the limitations period. The court will grant the plaintiff the opportunity to do so.

7

## II. Wrongful Termination in Violation of Public Policy

DEQ also seeks dismissal of Count IV, in which Branscome claims that he was terminated in violation of public policies expressed in the VDA. For the following reasons, DEQ's motion will be granted with respect to this claim.

The Commonwealth of Virginia generally adheres to the doctrine of at-will employment, meaning that employment lasts for an indefinite term and can be terminated for almost any reason. Weidman v. Exxon Mobil Corp., 776 F.3d 214, 221 (4th Cir. 2015). "However, there is an exception to this doctrine for at-will employees who claim to have been discharged in violation of public policy." Id. The Supreme Court of Virginia has recognized three situations in which an at-will employee may establish that his discharge violated public policy:

> (1) where an employer fired an employee for exercising a statutorily created right; (2) when the public policy is "explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy"; and (3) "where the discharge was based on the employee's refusal to engage in a criminal act."

Id. (quoting Rowan v. Tractor Supply Co., 559 S.E.2d 709, 711 (Va. 2012)). Claims based on these scenarios are often referred to as "Bowman claims," after Bowman v. State Bank of Keysville, 331 S.E.2d 797 (Va. 1985), the first case in which the Supreme Court of Virginia found that an at-will employee's termination could violate public policy.

In this case, Branscome argues that his complaint states a claim under the second scenario, since he alleges that he was terminated in violation of the public policies against disability discrimination embodied in the VDA. The problem with Branscome's argument is that the Virginia Human Rights Act ("VHRA") also expresses a public policy against discrimination on the basis of disability. See Va. Code § 2.2-3900 (B) ("It is the policy of the Commonwealth to

8

. . . [s]afeguard all individuals within the Commonwealth from unlawful discrimination because of . . . disability[.]"). In 1995, the Virginia General Assembly amended the VHRA to provide that "[c]auses of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by federal or state civil rights statutes or local ordinances." Va. Code § 2.2-3903(D). Since that time, the Virginia Supreme Court and other courts applying Virginia law have held that the 1995 amendments "eliminated a common law cause of action for wrongful termination based on any public policy reflected in the VHRA, regardless of whether the policy is articulated elsewhere." Conner v. National Pest Control Ass'n, 513 S.E.2d 398, 400 (Va. 1999) (extending the rationale of Doss v. Jamco, Inc., 492 S.E.2d 441, 447 (Va. 1997), in which the Court concluded that "the General Assembly plainly manifested an intent to abrogate the common law with respect to causes of action for unlawful termination of employment based upon the public polices reflected in the [VHRA]"); see also Lamb v. Qualex, Inc., 28 F. Supp. 2d 374, 379 (E.D. Va. 1998) (Williams, J.) ("[T]he courts of this district have unanimously held that the VHRA and analogous state statutes no longer provide the public policy basis for a Bowman cause of action. This Court now joins those cited above and holds that a state statute expressing a public policy also found in the VHRA does not provide an independent cause of action for adverse employment actions.") (collecting cases).

In response to the pending motion, Branscome cites to the Virginia Supreme Court's decision in Bradick v. Grumman Data Systems Corp., 486 S.E.2d 545 (Va. 1997), in which the Court allowed the plaintiff to state a Bowman claim based on public policies against disability discrimination expressed in both the VHRA and the VDA. As other courts have noted, however, the Bradick decision did not address the effect of the 1995 amendments to the VHRA. See, e.g., McCarthy v. Texas Instruments, 999 F. Supp. 823, 831 (E.D. Va. 1998). Instead, the Supreme

9

Court expressly noted that its decision was "based on the public policy expressed in the VDA and VHRA at the time of Grumman Data's alleged act of discrimination." Bradick, 486 S.E.2d at 547; see also id. at 545 (noting that the plaintiff was discharged on May 26, 1994). Additionally, Bradick was decided before Doss, and more importantly, before Conner, in which the Supreme Court made clear that the VHRA prohibits a common law cause of action for wrongful termination based on violations of public policies enunciated in both the VHRA and other provisions of state or federal law. Conner, 513 S.E. 2d at 398. For these reasons, the court finds Branscome's reliance on Bradick unavailing.

In sum, because Branscome's Bowman claim is based on public policies that are also reflected in the VHRA, the claim is barred by Virginia Code § 2.2-3903(D). Accordingly, DEQ's motion will be granted with respect to Count IV.

## **Conclusion**

For the reasons stated, the court will grant DEQ's partial motion to dismiss. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 30th day of October, 2017.

                                                /s/ Glen E. Conrad
                                              United States District Judge